# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 52313

EDWARD STASIEWICZ and BARBARA STASIEWICZ, husband and wife,

   Plaintiffs-Appellants,

and

THE SOUTH HENRY'S LAKE OUTLET HOMEOWNERS ASSOCIATION, INC., (HOA), an Idaho nonprofit corporation; MICHAEL ERIC BIGLER and DIANE GAIL BIGLER, as Trustees of the LIDGATE BIGLER TRUST and SHERWIN BIGLER TRUST, BDS, LLC, an Idaho limited liability company; RONALD J. JENKINS, an Individual; JACK SOMMER, an Individual; DOMINION INVESTMENTS, LTD., a Utah limited partnership; JODY L. HANSEN, as Trustee of the TODD AND DIANE BOWEN TRUST; TODD JOHNSON and MARCIA JOHNSON, as Trustees of the JOHNSON FAMILY TRUST; CHARLES DOUGLAS WARD and LAREE L. WARD, as Trustees of the WARD FAMILY TRUST; JAMES KEITH KELLY, JR., an Individual; HENRY'S LAKE CABIN, LLC, a Utah limited liability company; MICHAEL KENT and LESLIE PATRICE TAYLOR, husband and wife; BAKER FAMILY CABIN, LLC, an Idaho limited liability company; GOODWIN HERITAGE, LLC, an Idaho limited liability company; NOSKIRE COMPANY, LP, an Idaho limited partnership; SAWTELLE, LLC, an Idaho limited liability company; HNH PROPERTIES, LLC, a Utah limited liability company; THOMPSON BROTHERS, LLC, an Idaho limited liability company; SLEA 487, LLC, a Utah limited liability company; LAKE ESCAPE, LLC, an Idaho limited liability company; JAMES W. FEHLIG and ANGELIQUE J. FEHLIG, husband and wife; HARVEST HOME, LLC, an Idaho limited liability company; TRENT CICHOS and

Pocatello, October 2025 Term

Opinion Filed: January 6, 2026

Melanie Gagnepain, Clerk

1

KARIE CICHOS, husband and wife;            )
PATRICIA SNYDER, an Individual; ANN B.     )
SMITH and DARREN L. SMITH, husband         )
and wife; RUDD VENTURES, LLC, an Idaho     )
limited liability company; CAROL JANET     )
SCHLEY, an Individual; PETER JEFFREY       )
THOMPSON and TONI DIANE                    )
THOMPSON, husband and wife;                )
RYTALOMA, LLC, an Idaho limited liability  )
company; MICHAEL  GROBERG, an              )
Individual; GARTH CHANDLER and             )
STEPHANIE CHANDLER, husband and wife;)
TH SQUARED, LLC, an  Idaho limited         )
liability company; KIMBALL W. MASON        )
and KRISTINE MASON, husband and wife;      )
DARY R. GOODWIN and PENNY S.               )
GOODWIN, husband and wife; RICHARD N.      )
WALLACE and CAROLYN A. WALLACE,            )
husband and wife; RODNEY E.  ANDERSON      )
and MARILYN M. ANDERSON, husband and)
wife; JOHN K.  BRABEC and TAMRA            )
BRABEC, husband   and wife; DEREK          )
LESLIE and HOLLI LESLIE, husband and       )
wife; AMMON  HAVEN, LLC, an Idaho          )
limited liability   company; BLAKE L. NEIL )
and KATHY J.  NEIL, husband and wife;      )
STEVEN R. TUTTY and LAUREL M.              )
TUTTY, husband and wife; WAYNE             )
MORTENSEN and  JAN MORTENSEN,              )
husband and wife; JOSIE A. BROWN, an       )
Individual; MATTHEW G.  RICHMOND and )
ANN RICHMOND, husband  and wife; IP        )
VENTURES, LLC, an Idaho limited liability  )
company; COREY FIELDS and DEANNA           )
FIELDS, husband and wife; MICHAEL          )
CROWLEY and KARENT CROWLEY,                )
husband and wife; EVAN H. GOODWIN and )
SUSAN GOODWIN, husband and wife;           )
KIRSTEN HARDCASTLE and LISA                )
WATTERS, as Trustees of the BERRETT        )
INVESTMENT TRUST, HUCKLEBERRY,             )
LLC, an Idaho limited liability company;   )
GARY JONES and MAUREEN JONES,              )
husband and wife; LARRY KIMBALL and        )
ANNETTE MARQUARDT-KIMBALL, as              )
Trustees for the LARRY KIMBALL and

2

ANNETTE MARQUARDT-KIMBALL )
TRUST; ELIZABETH MICHELE )
MOLINELLI-RUBERTO and KATHRYN )
NICOLE MOLINELLI-STEVENSON, as )
Trustees of the MOLINELLI FAMILY 1989 )
TRUST; BYRON L. REED, as Trustee for the )
JOANNE REED FAMILY TRUST; JEFFREY )
J. REILEY, an Individual; DAVID SHARP )
and  LYNETTE SHARP, husband and wife; )
SUNROC  HOLDINGS, LLC, an Idaho )
limited liability  company; WELLS FAMILY )
CABIN, LLC, an Idaho limited liability )
company; KURT  WELLS and JILL WELLS, )
husband and wife; CLAIR E. ZENK and )
LENYCE ZENK, )
husband and wife, )
)
   Plaintiffs, )
)
v. )
)
HENRY'S LAKE VILLAGE, LLC, an Idaho )
limited liability company; CHRISTOPHER L. )
CAMPBELL AND HEATHER CAMPBELL, )
husband and wife; DON THOMAS CLARK )
AND SHERRIE LYNN GUBLER CLARK as )
Trustees of THE CLARK FAMILY )
REVOCABLE TRUST; COYOTE CABIN, )
LLC, an Idaho limited liability company; )
DRIFTWOOD LODGE, LLC, an Idaho )
limited  liability company; FAIR DINKUM )
DEVELOPMENTS, LLC, an Idaho limited )
liability company; FRIGATE HOLDINGS, )
LLC, an Idaho limited liability company; )
RYAN  HALES AND KENDRA  HALES, )
husband and wife; RYAN JOHNSON AND )
CATHERINE JOHNSON, husband and wife; )
RAND R. KRIECH AND SONIA C. KRIECH, )
as Trustees of THE 2016 RAND R. KRIECH )
AND SONIA C. KRIECH REVOCABLE )
TRUST; JARED LAMPH AND KARIESA )
LAMPH, husband and wife; LOREN LUND )
AND HOLLI LUND, husband and wife; )
TREVIN RICKS AND STEPHANIE RICKS, )
husband and wife; REES RUMSEY AND )
NANCY RUMSEY, husband and wife; KIP )

3

**CASHMORE, as Trustee for THE SANDS TRUST; STUCKI HAVEN, LLC, an Idaho limited liability company; BEN TOMLINSON AND CHRISTY TOMLINSON, husband and wife; TERRY L. VANCE and SARA C. VANCE, husband and wife,**

  **Defendants-Respondents.**

)
)
)
)
)
)
)
)
)
)

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Fremont County. Joel E. Tingey, Senior District Judge. Steven W. Boyce, District Judge.

The judgment of the district court is <u>vacated</u>, its decision dismissing the Stasiewiczes' claims is <u>reversed</u>, and this case is <u>remanded for further proceedings</u>.

Kirton McConkie, Boise, for Appellants Edward Stasiewicz and Barbara Stasiewicz. Jon T. Simmons argued.

Racine Olson, PLLP, Pocatello for Respondents. Elisheva M. Patterson argued.

---

MEYER, Justice.

This appeal provides important clarifications of the procedure governing a motion to dismiss for lack of subject matter jurisdiction under Idaho Rule of Civil Procedure 12(b)(1). This case arises from a dispute among neighboring property owners in Fremont County concerning roadway access rights along Bootjack Drive and Whitetail Lane in the Henry's Lake area. The plaintiffs, including Appellants Edward and Barbara Stasiewicz, filed suit to establish easements over land owned by Henry's Lake Village, LLC, and other neighboring properties (collectively referred to as "HLV"), alleging claims for express, implied, and prescriptive easements. The controversy primarily centers on the Stasiewiczes' 80-acre landlocked parcel.

HLV filed a motion to dismiss the complaint for lack of subject matter jurisdiction under Rule 12(b)(1), and the Stasiewiczes filed a motion for summary judgment under Idaho Rule of Civil Procedure 56. Pertinent here, HLV argued that the Stasiewiczes' easement claims were moot because HLV had previously granted the Stasiewiczes express access easements for Bootjack Drive and Whitetail Lane in 2021 and 2022. Initially, the district court granted HLV's motion to dismiss in part, holding that the Stasiewiczes' claims for an express easement and prescriptive

4

easement were rendered moot by the access easements granted by HLV. However, the district court declined to dismiss the Stasiewiczes' implied easement claim and instead requested supplemental briefing on whether a default judgment in a related quiet title action against the Stasiewiczes' predecessors in interest precluded their claims under the doctrine of res judicata. The Stasiewiczes and HLV filed supplemental briefing, declarations, and cross motions to strike portions of the declarations. Thereafter, the district court rejected the motions to strike without addressing the admissibility of the challenged evidence, explaining that it was denying the motions to strike "in order to provide resolution on the merits after fully considering the available facts to the [c]ourt." Next, the court granted HLV's motion to dismiss, holding that the Stasiewiczes' easement claims were rendered moot by the access easements granted by HLV and that the claims were precluded by res judicata.

The Stasiewiczes challenge the district court's decisions on numerous grounds. In pertinent part, they argue the district court abused its discretion when evaluating their motions to strike because its reasoning for denying the motions was arbitrary and the challenged evidence was inadmissible. They argue that the district court erred by concluding that their easement claims were precluded by res judicata because (1) the court improperly raised the issue sua sponte, and (2) whether privity existed under the circumstances was a triable issue of fact. They further argue that the court erred in concluding their easement claims were moot because the access easements granted by HLV contained significant restrictions. For the reasons discussed below, we vacate the judgment of the district court, reverse its decision dismissing the Stasiewiczes' claims, and remand this case for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Stasiewicz and Henry's Lake Village Properties

Beginning in 1939, the Rasmussen family historically owned land in the Henry's Lake area and used Bootjack Drive for access. Bootjack Drive is a privately owned, gravel road, which connects to U.S. Highway 20. A "lateral spur road" named Whitetail Lane branches off Bootjack Drive and provides access to various other parcels. Over a period of decades, Oran K. Rasmussen sold portions of this land to a number of individuals who built summer homes or other cabins consistent with similar structures in the broader area. Sometime in 1999, the Oran K. Rasmusen and Ila Jean Rasmussen Trust ("Rasmussen Family Trust") was formed, which continued to convey portions of the land. In 2006 and 2007, the Rasmussen Family Trust conveyed two portions

of this land to John and Traci Dolby, the Stasiewiczes' predecessors in interest, with an express easement over Whitetail Lane but not over Bootjack Drive.

Then, in 2016, Henry's Lake Village, LLC purchased property (the "HLV Property") from the Rasmussen Family Trust, which Bootjack Drive and Whitetail Lane traverse. The Rasmussen Family Trust made its conveyance to HLV subject to "a sixty (60) foot wide Ingress-Egress Easement, and any Easement or Right-of-Way of Record." However, the warranty deed to HLV does not identify a dominant estate. Shortly after the Rasmussen Family Trust conveyed the land to HLV, HLV created two subdivisions. Sometime after HLV developed those subdivisions, it sold the individual lots to a number of the other defendants in this case. The Stasiewicz and HLV properties are depicted below, with the large Stasiewicz parcel shown in dark gray and the HLV parcels along Bootjack Drive shown in light blue:



**Figure 1.**

## B. Quiet Title Judgment and Sales Agreement

In 2019, the Rasmussen Family Trust granted the Dolbys a new warranty deed (the "Corrective Deed") that added an easement over Bootjack Drive. One year later, Tracy Dolby

recorded a quitclaim deed transferring her interest in the real property to John Dolby individually. This quitclaim deed contained the same easement over Bootjack Drive.

On June 23, 2020, HLV filed suit against the Dolbys challenging the Corrective Deed in Fremont County Case No. CV22-20-218 ("Quiet Title Action"). HLV argued the Dolbys slandered the title to its properties by recording an easement encumbering them without HLV's permission and requested that the Corrective Deed be declared void. At some point in June or July 2020, the Dolbys entered into a sales agreement to transfer their 80-acre property to the Stasiewiczes and, on July 27, 2020, the Dolbys recorded a warranty deed conveying their property to the Stasiewiczes. Seven days later, on August 3, 2020, the district court entered a default judgment quieting title in favor of HLV (the "Quiet Title Judgment"). The Quiet Title Judgment states in pertinent part:

> The real property . . . is hereby quieted in and to Henry's Lake Village LLC so that that [sic] neither defendants nor or [sic] their successors in interest hold no [sic] right, title [sic] estate, lien, encumbrance, easement or interest in the Real Property.

### C. 2021 Bootjack Drive Easement

In August 2020, Edward Stasiewicz was using Bootjack Drive and Whitetail Lane to access his property. Terry Vance, a member of HLV, approached Mr. Stasiewicz and informed him that he was trespassing. Thereafter, the Stasiewiczes hired an attorney to investigate the Quiet Title Judgment, preparatory to potentially filing a claim against their title company.

On July 2, 2021, pursuant to an agreement between Alliance Title Company and HLV, HLV granted an access easement over Bootjack Drive ("2021 Bootjack Drive Easement") to the Stasiewiczes. That easement, however, contained two relevant restrictions. Specifically, the easement "automatically terminates" if the Stasiewiczes subdivide their 80 acres or use their property for anything other than agricultural and/or single-family residential purposes:

> **1. No Subdivision.** The Benefitted Property currently consists of two legal parcels, and the Easement shall provide access to two legal parcels only. The Easement shall automatically terminate if the Benefitted Property is subdivided. Grantee may perform a lot line adjustment so long as the Benefitted Property consists of no more than two parcels.

> **2. Restricted Use.** Use of the Easement is restricted to ingress to and egress from the Benefitted Property for agricultural and/or single-family residential purposes in accordance with Fremont County ordinances. The Easement shall automatically terminate if the Benefitted Property is used for any other purpose.

### D. Procedural History

The South Henry's Lake Outlet Homeowners Association is distinct from HLV and is composed of approximately 72 parcels, including the Stasiewiczes' property. The HOA properties are accessed via Bootjack Drive and Whitetail Lane. In 2021, the HOA owners filed suit against HLV alleging various easement claims over Bootjack Drive and Whitetail Lane. Thereafter, on May 4, 2022, HLV granted an unrestricted access easement over Bootjack Drive to all the HOA properties accessible via Bootjack Drive except the Stasiewicz property (hereafter "2022 Bootjack Drive Easement").

On July 14, 2022, the HOA owners filed an amended complaint against HLV, alleging claims for express easement, easement by implication, and prescriptive easement over Bootjack Drive and Whitetail Lane. Thereafter, on September 19, 2022, HLV granted an easement over Whitetail Lane to the HOA properties accessible via Whitetail Lane, including the Stasiewicz property, without any restrictions on use (hereafter "2022 Whitetail Easement").

Dissatisfied with the easements granted by HLV, about three months later, on December 12, 2022, the HOA owners filed a motion for summary judgment on each of their three easement claims. The HOA owners argued that a prescriptive easement existed over Bootjack Drive because the HOA owners "and their predecessors in interest openly and continuously used Bootjack Drive under a claim of right and with the actual or imputed knowledge of the Rasmussens" for a period of more than five years prior to 2006. They argued that an implied easement existed over Bootjack Drive based on Oran and Ila Rasmussen's common ownership and subdivision of all the relevant land in dispute and historic use of Bootjack Drive. They further argued that HLV took title subject to an existing express access easement on Whitetail Lane and Bootjack Drive (presumably without the restrictions contained in the 2021 Bootjack Drive Easement).

HLV opposed the motion. HLV argued in pertinent part that the HOA owners' claims for an access easement over Bootjack Drive were moot because the HOA owners had already obtained the requested relief by virtue of the 2021 Bootjack Drive Easement and 2022 Bootjack Drive Easement. While acknowledging that the Stasiewicz property's 2021 Bootjack Drive Easement contained a subdivision restriction, HLV argued the Stasiewiczes "offer no cognizant argument as to why [their] parcel is owed an unrestricted easement" and that issues of material fact precluded summary judgment on that issue. Notably, HLV did not reference the Quiet Title Judgment or argue that res judicata barred the Stasiewiczes' claims.

Then, in January 2023, HLV filed a Rule 12(b)(1) motion to dismiss the HOA owners' amended complaint as moot. HLV again argued that "no justiciable controversy exists" because all the HOA members received their requested relief by virtue of the 2021 Bootjack Drive Easement, 2022 Bootjack Drive Easement, and 2022 Whitetail Easement.

On March 8, 2023, the district court issued its memorandum decision and order on HLV's motion to dismiss. The district court held that all the HOA owners' claims seeking access easements, except for the Stasiewiczes' claims, were rendered moot by the access easements granted by HLV. The district court then addressed each of the Stasiewiczes' claims separately, noting that the Stasiewiczes were seeking to establish easement rights "beyond that granted by" HLV, presumably referring to the restrictions contained in the 2021 Bootjack Drive Easement.

First, the district court determined that any claim made by the Stasiewiczes for a prescriptive easement was "rendered moot" by the express grant of an access easement granted by HLV. The court did not, however, specify which access easement it was referencing. The district court explained that "[t]he scope of an easement by prescription is limited to its historical use" and that the Stasiewiczes' property "was historically used for agriculture, with some use for recreation." Therefore, even if the Stasiewiczes established an easement by prescription, that easement would not provide the Stasiewicz with greater rights than the express easement granted by HLV. Second, the district court determined the Stasiewiczes' express easement claim over Whitetail Lane was rendered moot by the 2022 Whitetail Easement granted by HLV and that the Stasiewiczes' express easement claim over Bootjack Drive was "not supported by the record" because the Stasiewiczes did not identify an alternative instrument to the 2021 Bootjack Drive Easement that provided an express easement for the benefit of the Stasiewicz property. Finally, the court deferred ruling on the Stasiewiczes' implied easement claim and requested briefing on whether res judicata barred the Stasiewiczes from pursuing an implied easement due to the Quiet Title Judgment, among other things.

On March 24, 2023, the HOA owners filed a motion for reconsideration, supported by the declarations of David Hill, Edward Stasiewicz, John Dolby, and attorney Kipp Manwaring. The HOA owners argued that the Quiet Title Judgment did not preclude them from pursuing a claim for an implied easement because (1) the Stasiewiczes were not named parties to the action between HLV and the Dolbys, (2) HLV did not record a notice of lis pendens on the Stasiewicz parcel pursuant to Idaho Code section 5-505 as part of its quiet title action, and (3) the Quiet Title

Judgment was not recorded until after closing of the sale and recording of the deed between the Dolbys and the Stasiewiczes. Furthermore, they argued that they were "good faith purchasers for value" whose title interest was recorded before the Quiet Title Judgment.

Three days later, HLV filed its supplemental briefing, which was supported by the declarations of Kurtis Reed, Terry Vance, Wade Rumsey, and Luke Bloxham. HLV argued that the Quiet Title Judgment precluded the Stasiewiczes from claiming an implied easement because the Stasiewiczes' easement rights over Bootjack Drive were previously litigated. Pertinent here, HLV argued that the Quiet Title Judgment applied to the Stasiewiczes because the Stasiewiczes and Dolbys had privity based on (1) their "substantive legal relationship . . . as preceding and succeeding owners of the property" that "existed before the quiet title complaint was filed," and (2) because Edward Stasiewicz "had actual knowledge of the quiet title lawsuit before purchasing the property."

On May 16, 2023, the HOA owners filed an "augmented briefing,"—which was purportedly "[i]n accordance with the [district] court's invitation in its order filed April 20, 2023[.]" The HOA owners also filed the second declarations of Edward Stasiewicz and Kipp Manwaring in support of their motion for reconsideration and their augmented briefing. The HOA owners argued that the district court needed to address their "claim to an implied easement by prior use to all properties owned by the" HOA owners and that the express easements granted by HLV could not "deprive [their] lawful claim" where the easements were "limited in scope and properties identified as dominant estates." That same day, the HOA owners filed a motion to strike the declaration of Luke Bloxham and "certain portions" of the second declarations of Terry Vance and Wade Rumsey, arguing that the testimony contained inadmissible hearsay or conclusory allegations.

On May 16, 2023, HLV filed its memorandum in opposition to HOA owners' motion for reconsideration, followed several days later by the third declaration of Wade Rumsey, and the second declaration of Kurtis Reed. Two days later, it also filed a motion to strike the HOA owners' augmented brief, the Second Declaration of Edward Stasiewicz, and the HOA owners' motion to strike, arguing that the motions were untimely under the district court's scheduling order. Two days later, the HOA owners filed a motion to strike portions of the third declaration of Wade Rumsey, arguing that the testimony contained inadmissible hearsay or conclusory allegations.

On June 30, 2023, the district court granted HLV's motion to dismiss the HOA owners' complaint. Initially, the district court summarily rejected the outstanding motions to strike and stated that it had considered all evidence submitted:

> The [c]ourt will quickly dispense with the parties' requests to strike multiple declarations from the record in order to provide resolution on the merits after fully considering the available facts to the [c]ourt. Accordingly, the [c]ourt has fully considered all of the supplied briefing, legal authority, and declarations to bring the facts before this [c]ourt. Accordingly, the motions to strike are DENIED.

Next, the district court concluded that the 2022 access easements granted by HLV rendered the Stasiewiczes' easement claims moot, regardless of the restrictions set forth under the 2021 Bootjack Drive Easement. The district court further held that the Stasiewiczes' claims were barred by the Quiet Title Judgment under the doctrine of res judicata. It reasoned that knowledge of the quiet title suit was imputed to the Stasiewiczes through their realtor, title company, and counsel, and that their choice not to intervene or set aside the default left the judgment binding on the Stasiewiczes. The district court dismissed the Stasiewiczes' motion for summary judgment as moot given that they "already [had] all the relief they are entitled to receive, and cannot prevail on a summary judgment claim given the [c]ourt's determinations[.]"

The Stasiewiczes timely appealed.

## II.  ANALYSIS

### A. The district court erred when it raised the res judicata defense sua sponte.

The Stasiewiczes contend that the trial court erred in concluding that res judicata barred their claims for multiple reasons. First, they argue the district court improperly raised the res judicata defense sua sponte. Second, they argue the Quiet Title Judgment is void and cannot serve as the foundation for a res judicata ruling. Third, they argue the district court erred by failing to evaluate this issue under a summary judgment standard, that the district court erred by failing to address the admissibility of the evidence challenged by their motions to strike, and that genuine issues of material fact precluded dismissal of their easement claims. However, because we hold the district court erred when it raised the res judicata defense sua sponte, we need not address the Stasiewiczes' remaining arguments.

"*Res judicata* is an affirmative defense and the party asserting it must prove all of the essential elements by a preponderance of the evidence." *First Sec. Corp. v. Belle Ranch, LLC*, 165 Idaho 733, 740–41, 451 P.3d 446, 453–54 (2019) (quoting *Ticor Title Co. v. Stanion*, 144 Idaho 119, 122, 157 P.3d 613, 616 (2007)). "The doctrine of *res judicata* covers both claim preclusion

11

(true *res judicata*) and issue preclusion (collateral estoppel)." *Monitor Fin., L.C. v. Wildlife Ridge Ests., LLC*, 164 Idaho 555, 560, 433 P.3d 183, 188 (2019) (citation omitted). "Claim preclusion bars a subsequent action between the same parties upon the same claim or upon claims relating to the same cause of action." *Elsaesser v. Riverside Farms, Inc.*, 170 Idaho 502, 508, 513 P.3d 438, 444 (2022) (quoting *Berkshire Invs., LLC v. Taylor*, 153 Idaho 73, 81, 278 P.3d 943, 951 (2012)). "Issue preclusion protects litigants from having to relitigate an identical issue in a subsequent action." *Id.* at 509, 513 P.3d at 445 (quoting *Ticor Title Co.*, 144 Idaho at 124, 157 P.3d at 618).

"[T]his Court takes a dim view of fact-finding tribunals raising defenses or theories *sua sponte*. Theories and defenses should be determined by the parties, not the tribunal." *Deon v. H & J, Inc.*, 157 Idaho 665, 671, 339 P.3d 550, 556 (2014). "In general, a trial court may not raise an affirmative defense that has not been previously raised by the parties." *Van Orden v. Van Orden*, 170 Idaho 597, 607, 515 P.3d 233, 243 (2022) (citing *Med. Recovery Servs., LLC v. Siler*, 162 Idaho 30, 35, 394 P.3d 73, 78 (2017)). However, in the interests of judicial economy, federal courts have recognized a limited exception to this general rule where, as in this case, the latter action arises in the same court as the earlier action. *See, e.g.*, *Arizona v. California*, 530 U.S. 392, 412–13 (2000); *Mowbray v. Cameron County, Tex.*, 274 F.3d 269, 281 (5th Cir. 2001); *Threatt v. Winston*, 907 A.2d 780, 782–83 (D.C. 2006); *Shurick v. Boeing Co.*, 623 F.3d 1114, 1116 n.2 (11th Cir. 2010). In *Arizona*, the United States Supreme Court explained the rational for this exception:

> [T]he State parties argue that even if they earlier failed to raise the preclusion defense, this Court should raise it now *sua sponte*. Judicial initiative of this sort might be appropriate in special circumstances. Most notably, if a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte*, even though the defense has not been raised. . . . Where no judicial resources have been spent on the resolution of a question, trial courts must be cautious about raising a preclusion bar *sua sponte*, thereby eroding the principle of party presentation so basic to our system of adjudication.

530 U.S. at 412–13 (internal citation and quotations marks omitted).

In *Deon*, this Court considered whether the Idaho Industrial Commission erred when it raised a res judicata defense—issue preclusion/collateral estoppel—sua sponte. 157 Idaho at 667, 339 P.3d at 552. There, Deon had filed a worker's compensation claim against her employer, its surety, and the Idaho Special Indemnity Fund ("ISIF"). *Id.* at 666–67, 339 P.3d at 551–52. Deon settled her claim with the ISIF, which apportioned 60% of the fault to ISIF for her total and permanent disability ("TPD"). *Id.* at 667, 339 P.3d at 552. Thereafter, her claim against the employer/surety went to a hearing. *Id.* Her employer/surety chose not to raise collateral estoppel

as a defense to Deon's claim, despite its knowledge of the settlement agreement. *Id.* at 671, 339 P.3d at 556. Following the hearing, the Commission found the employer/surety 100% liable for her TPD. *Id.* at 667, 339 P.3d at 552. However, "[t]he Commission *sua sponte* raised, and invited the parties to brief, the issue of whether Deon's settlement with the ISIF should have some collateral estoppel effect on her claim of [e]mployer/[s]urety's 100% liability." *Id.* After the parties briefed the issue, the Commission held that Deon was estopped from arguing that the employer/surety was 100% liable and reapportioned TPD liability between the employer/surety and ISIF. *Id.*

On appeal, we reversed the Commission's decision. *Id.* at 672, 339 P.3d at 557. Initially, we noted our agreement with the United States Supreme Court's "observation" in *Arizona* that judicial initiative of this sort may be appropriate in special circumstances. *Id*. at 668–69, 339 P.3d at 553–54. However, after analyzing our decisions in *Heitz v. Carroll*, 117 Idaho 373, 788 P.2d 188 (1990), and *Sales v. Peabody*, 157 Idaho 195, 335 P.3d 40 (2014), where we determined that the trial court erred by raising or applying defenses and claims not raised by the parties in the tort context, we concluded that the Commission erred by sua sponte raising the issue of collateral estoppel. *Id.* at 669–70, 339 P.3d at 555–56. We emphasized that there was no question that the employer/surety knew of the ISIF settlement and therefore, the employer/surety was bound by its failure to raise the collateral estoppel defense:

> As demonstrated by our decisions in *Sales* and *Heitz*, this Court takes a dim view of fact-finding tribunals raising defenses or theories *sua sponte*. Theories and defenses should be determined by the parties, not the tribunal. Just as in *Sales*, where we held it was error for the district court to raise an affirmative defense not raised by the parties, the Commission erred here in raising collateral estoppel, which was never raised by [e]mployer/[s]urety before the Commission invited briefing on the issue. Although [e]mployer/[s]urety may not have known the complete substance of the ISIF agreement, there is no question it knew ISIF had settled with Deon and therefore knew ISIF had accepted some level of liability to Deon. Despite this knowledge, either intentionally or by oversight, [e]mployer/[s]urety chose not to raise estoppel theories as a defense to Deon's claim. In *Heitz*, we held that a party is bound by the theory upon which it tries its case. We cannot speak to the reasons [e]mployer/[s]urety failed to assert estoppel, but just as in *Sales* and *Heitz*, [e]mployer/[s]urety is held to that choice.

*Id.* at 671, 339 P.3d at 556.

The facts presented in this case are remarkably similar to those present in *Deon*. Like the employer/surety in *Deon*, there is no question that HLV was aware of the Quiet Title Judgment against the Dolbys; the judgment was entered by default at HLV's request. Yet, despite this

knowledge, HLV chose not to raise res judicata as a defense in this case. Rather than holding HLV to that choice, the district court sua sponte raised it, and invited the parties to brief the issue of whether the Quiet Title Judgment should have some preclusive effect over the Stasiewiczes' easement claims. This was error. As set forth above, "[w]here no judicial resources have been spent on the resolution of a question, trial courts must be cautious about raising a preclusion bar *sua sponte*, thereby eroding the principle of party presentation so basic to our system of adjudication." *Deon*, 157 Idaho at 669, 339 P.3d at 554 (quoting *Arizona*, 530 U.S. at 412–13). While we cannot speak to the reasons HLV did not assert res judicata, it remains subject to the consequences of not having raised the defense. *See id.* at 671, 339 P.3d at 556.

HLV cites *Duthie v. Lewiston Gun Club*, 104 Idaho 751, 753–54, 663 P.2d 287, 289–90 (1983), for the proposition that res judicata can be raised at any time because that doctrine "applies to every matter which might and should have been litigated in the first suit whether or not it was raised in the pleadings." However, HLV's reliance on *Duthie* is misplaced because in *Duthie*, the issue was raised by a party; thus, it did not address whether it is appropriate for a court to raise a res judicata defense sua sponte. Instead, the Court explained the scope of the res judicata doctrine, i.e., that its preclusive effect barred future litigation of "not only . . . every matter offered and received to sustain or defeat the claim, but also as to every matter which might and should have been litigated in the first suit." *Duthie*, 104 Idaho at 753, 663 P.2d at 289 (quoting *Intermountain Food Equip. Co. v. Waller*, 86 Idaho 94, 98, 383 P.2d 612, 614–15 (1963)).

Next, HLV argues that the Stasiewiczes tried the issue by consent under Idaho Rule of Civil Procedure 15(b) because the parties submitted briefing on the res judicata issue without objecting to the district court's raising of the issue in the first instance. The Stasiewiczes argue that an issue is not "tried" for purposes of Rule 15(b)(2) unless it is actually litigated at trial. We agree with the Stasiewiczes. Rule 15(b) states: "When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." I.R.C.P. 15(b)(2). However, "[a]n unpleaded issue is not tried by express or implied consent when nothing in the record indicates the issue *was litigated at trial*." *Fickenwirth v. Lanning*, 173 Idaho 1, 6, 538 P.3d 370, 375 (2023) (alteration in original) (emphasis added) (quoting *Gestner v. Divine*, 171 Idaho 159, 174, 519 P.3d 439, 454 (2022)).

14

For these reasons, we reverse the district court's decision to the extent that it based its dismissal of the Stasiewiczes' claims pursuant to an affirmative defense—the doctrine of res judicata—that it raised sua sponte.

**B. The district court erred by dismissing the Stasiewiczes' easement claims as moot.**

The Stasiewiczes argue that the district court erred by dismissing their express easement, implied easement, and prescriptive easement claims as moot. Before reviewing the district court's mootness analysis, we take a moment to clarify the standards for evaluating a factual challenge to a court's jurisdiction under Rule 12(b)(1).

"Idaho has adopted the constitutionally based federal justiciability standard." *ABC Agra, LLC v. Critical Access Grp., Inc.*, 156 Idaho 781, 783, 331 P.3d 523, 525 (2014) (citing *Davidson v. Wright*, 143 Idaho 616, 620, 151 P.3d 812, 816 (2006)). The doctrine of justiciability can be divided into several subcategories, including that of mootness. *Wylie v. State, Idaho Transp. Bd.*, 151 Idaho 26, 31, 253 P.3d 700, 705 (2011). Mootness is that part of justiciability that asks whether an intervening circumstance during the litigation precludes a favorable judicial determination from either (1) having "practical effect upon the outcome" of the case, or (2) providing any relief to prevailing party. *Frantz v. Osborn*, 167 Idaho 176, 180, 468 P.3d 306, 310 (2020) (citations omitted). "Justiciability challenges are subject to Idaho Rule of Civil Procedure 12(b)(1) since they implicate jurisdiction." *Bedke v. Ellsworth*, 168 Idaho 83, 91, 480 P.3d 121, 129 (2021) (quoting *Tucker v. State*, 162 Idaho 11, 18, 394 P.3d 54, 61 (2017)).

In considering motions to dismiss under Rule 12(b)(1), we have joined other courts in distinguishing between "facial" and "factual" challenges to subject matter jurisdiction. *Emps. Res. Mgmt. Co. v. Ronk*, 162 Idaho 774, 776–77, 405 P.3d 33, 35–36 (2017); *Von Lossberg v. State*, 170 Idaho 15, 18–19, 506 P.3d 251, 254–55 (2022); *see, e.g.*, *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016); *Granite Sch. Dist. v. Young*, 537 P.3d 225, 231–32 (Utah 2023); *Bleich v. Bleich*, 981 N.W.2d 801, 806 (Neb. 2022). "A facial attack challenges subject matter jurisdiction without disputing the facts alleged in the complaint and requires the court to treat the allegations of the complaint as true." 5B *Wright & Miller's Fed. Prac. & Proc. Civ.* § 1350 (4th ed.). "Facial challenges provide the non-movant the same protections as under a 12(b)(6) motion; thus, they are reviewed under the same standard." *Von Lossberg*, 170 Idaho at 19, 506 P.3d at 255 (internal quotation marks omitted).

A factual challenge, on the other hand, "attacks the factual allegations underlying the assertion of jurisdiction, either through the filing of an answer or otherwise presenting competing facts." 5B *Wright & Miller's Fed. Prac. & Proc. Civ.* § 1350 (4th ed.). In that instance, a court "may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). Therefore, "[f]actual challenges . . . allow the court to go outside the pleadings without converting the motion into one for summary judgment." *Vickers v. Idaho Bd. of Veterinary Med.*, 167 Idaho 306, 309, 469 P.3d 634, 637 (2020); *see also* 5B *Wright & Miller's Fed. Prac. & Proc. Civ.* § 1350; *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (citation omitted). However, "[i]f . . . a decision of the jurisdictional issue requires a ruling on the underlying substantive merits of the case, the decision should await a determination of the merits either by the district court on a summary judgment motion or by the fact finder at the trial." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 87 (2d Cir. 2013) (second alteration in original) (quoting 5C *Wright & Miller's Fed. Prac. & Proc. Civ.* § 1350 (3d ed. 2010)). Generally, "[b]y making a factual attack on subject-matter jurisdiction in the context of a Rule 12(b)(1) motion to dismiss, the defendant shifts to the plaintiff the burden of proving by a preponderance of the evidence, or proof to a reasonable probability that the court has subject-matter jurisdiction[.]" *Allen v. Campbell*, 169 Idaho 613, 619, 499 P.3d 1103, 1109 (2021) (quoting 61A Am. Jur. 2d *Pleading* § 451). However, a defendant "bears the burden to establish that a once-live case has become moot." *West Virginia v. Env't Prot. Agency*, 597 U.S. 697, 719 (2022) (citation omitted).

Here, HLV submitted extrinsic evidence to support its argument that the Stasiewiczes' claims should be dismissed under Rule 12(b)(1) and, in ruling on the motion, the district court looked beyond the Stasiewiczes' complaint and considered extrinsic evidence submitted by both HLV and the Stasiewiczes to determine whether the Stasiewiczes' easement claims were moot. Therefore, the attack on the district court's jurisdiction was factual, and not facial. However, in concluding that the Stasiewiczes' easement claims were moot, the court addressed the underlying substantive merits of the Stasiewiczes' easement claims, holding that the Stasiewiczes could not establish that they were entitled to greater easement rights than those granted by HLV through the 2021 Bootjack Drive Easement and 2022 Whitetail Easement. For the reasons set forth below, we reverse the district court's decision, addressing each claim in turn.

*1. The district court erred when it determined that the Stasiewiczes' claim for an express easement over Bootjack Drive was moot.*

The district court concluded that the express easement claim was moot because (1) the Quiet Title Judgment was "valid and enforceable" against the Stasiewiczes, which invalidated the 2019 Corrective Deed granting an express easement over Bootjack Drive; (2) HLV granted express access easements benefitting the Stasiewiczes' property over Bootjack Drive and Whitetail Lane; and (3) the Stasiewiczes failed to present an alternative instrument that provided an express easement over Bootjack Drive for the benefit of the Stasiewiczes' property.

On appeal, the Stasiewiczes argue that the district court erred when it determined the Quiet Title Judgment was valid and enforceable against the Stasiewiczes for the same reasons the court erred in concluding that their claims were barred by res judicata. The Stasiewiczes further argue that, as bona fide purchasers of the Dolbys' property, they benefit from the unrestricted access easements over Whitetail Lane and Bootjack Drive pursuant to the Rasmussen Family Trust's 2006, 2007, and 2019 deeds. HLV argues that the Stasiewiczes' easement claims over Whitetail Lane are moot because HLV already granted the Stasiewiczes an unrestricted access easement over Whitetail Lane. They further argue that the only express easement in the record that provides access to the Stasiewiczes' property over Bootjack Drive is the 2021 Bootjack Drive Easement; therefore, the district court did not err by determining it could not decree to the Stasiewiczes' any greater rights than are provided by the express easement granted by HLV.

"Generally, '[a] case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Edmondson v. Finco*, 172 Idaho 421, 424, 533 P.3d 1012, 1015 (2023) (alteration in original) (quoting *Frantz*, 167 Idaho at 180, 468 P.3d at 310); *see also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160–61 (2016) ("A case becomes moot . . . 'only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.' " (quoting *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012))). "An issue is moot if it presents no justiciable controversy and a judicial determination will have no practical effect upon the outcome." *Frantz*, 167 Idaho at 180, 468 P.3d at 310 (quoting *Farrell v. Whiteman*, 146 Idaho 604, 610, 200 P.3d 1153, 1159 (2009)).

Initially, we agree with HLV that the issue of whether the Stasiewiczes are entitled to an easement over Whitetail Lane is moot. In their complaint, the Stasiewiczes requested a judgment declaring that their property benefited from an access easement over Whitetail Lane. However, during the litigation, HLV granted the Stasiewiczes an unrestricted access easement over Whitetail

17

Lane. "[O]ne such circumstance mooting a claim arises when the claimant receives the relief he or she sought to obtain through the claim." *Hrivnak v. NCO Portfolio Mgmt., Inc.*, 719 F.3d 564, 567 (6th Cir. 2013) (alteration in original) (emphasis omitted) (quoting *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002)). Therefore, there is no justiciable controversy as to whether the Stasiewiczes are entitled to an easement over Whitetail Lane and a favorable judicial decision on this issue would not result in any further relief to the Stasiewiczes in the case.

However, we conclude that the district court erred when it determined that the Stasiewiczes' claim for an express easement over Bootjack Drive is moot. As set forth in Section A, the district court erred by sua sponte raising the Quiet Title Judgment's effect on the Stasiewiczes' claims and, therefore, likewise erred by concluding the Quiet Title Judgment was "valid and enforceable" against the Stasiewiczes. It is important to note that *even if* HLV had raised the Quiet Title Judgment's preclusive effect as a defense, the district court's mootness analysis of the Stasiewiczes' express easement claim over Bootjack Drive was erroneous in several other respects.

First, the district court applied an incorrect legal standard when it determined that the Stasiewiczes' claim was moot. While the district court addressed the Stasiewiczes' express easement claim in terms of mootness, the court did not evaluate whether a favorable judgement on this claim would result in any effectual relief or whether the Stasiewiczes lacked a legally cognizable interest in the outcome in the adjudication of their claim. Rather, the district court's mootness ruling was predicated on its conclusion that the Stasiewiczes *could not prevail* on the substantive merits of their claim due to the preclusive effects of the Quiet Title Judgment and the Stasiewiczes' failure to produce an alternative instrument that provides an express easement over Bootjack Drive. However, "[p]reclusion . . . is not a jurisdictional matter." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005). And "[w]hen conducting a mootness analysis, a court must not 'confuse[] mootness with the merits.'" *Dierlam v. Trump*, 977 F.3d 471, 477 (5th Cir. 2020) (second alteration in original) (quoting *Chafin v. Chafin*, 568 U.S. 165, 174, (2013)). "An argument that an action is moot because the plaintiff is not entitled to the requested relief . . . is no more than an argument on the merits that should be decided on the merits." 13B *Wright & Miller's Fed. Prac. & Proc. Juris.* § 3533.1 (3d ed.) (citing *Chafin*, 568 U.S. at 174). However, "[i]t is . . . for lower courts at later stages of the litigation to decide whether [the plaintiff] is in fact entitled to the relief he seeks." *Chafin*, 568 U.S. at 177.

18

Second, even if the court could reach the merits of the Stasiewiczes' claims at this stage, the court also erred by failing to address the parties' various motions to strike evidence submitted in support of or in opposition to HLV's motion to dismiss under Rule 12(b)(1). "The admission of evidence is committed to the discretion of the trial court." *Herrera v. Estay*, 146 Idaho 674, 680, 201 P.3d 647, 653 (2009) (citing *Ada Cnty. Highway Dist. v. Total Success Inv., LLC*, 145 Idaho 360, 370 n.4, 179 P.3d 323, 333 n.4 (2008)). "Thus, this Court reviews a trial court's evidentiary rulings for abuse of discretion[.]" *Id.* (citation omitted). A trial court does not abuse its discretion if it: "(1) correctly perceive[s] the issue as one of discretion; (2) act[s] within the outer boundaries of its discretion; (3) act[s] consistently with the legal standards applicable to the specific choices available to it; and (4) reach[es] its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). While the district court is permitted to receive extrinsic evidence and determine factual disputes, a factual challenge under Rule 12(b)(1) must be decided on competent, admissible evidence. *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541–42 (7th Cir. 2006). Therefore, when a party objects to extrinsic evidence provided in support of or in opposition to a motion to dismiss under Rule 12(b)(1), as occurred in this case, it is axiomatic that the court *must* address the admissibility of this evidence as a threshold issue. *See Nield v. Pocatello Health Servs., Inc.*, 156 Idaho 802, 814, 332 P.3d 714, 726 (2014) ("It is axiomatic that objected-to evidence may not be admitted before the objection is considered and determined." (referencing summary judgment motions)).

Here, however, the district court failed to address the admissibility of the evidence challenged by the parties' various motions to strike and instead denied the motions "in order to provide resolution on the merits after fully considering the available facts to the [c]ourt." Thus, the district court abused its discretion by applying an incorrect legal standard when it denied the parties' various motions to strike.

For these reasons, we conclude that the district court erred when it dismissed the Stasiewiczes' express easement claim as moot under Rule 12(b)(1).

2. *The district court erred by dismissing the Stasiewiczes' claims for implied and prescriptive easements over Bootjack Drive.*

The district court also concluded that the Stasiewiczes' implied easement and prescriptive easement claims were moot because (1) the claims were precluded by HLV's grant of an express easement to the Stasiewiczes, and (2) the "historical use of the land" was limited to agriculture and recreational use:

19

The record contains numerous references to the historical use of the land—for agriculture and recreational use. Further, the original grantors repeatedly limited the scope of other related easements as conditioned upon the prevention of further subdivision of the parcels.

. . . [T]here can be no plausible set of facts to permit a claim for an implied easement or prescriptive easement because the record is already clear that express easements existed—albeit with restrictions the Stasiewiczes dislike. Nevertheless, the easements are not inconsistent with other easements granted or in any way restrictive of the Stasiewiczes['] ability to access their parcels. Accordingly, there is no live issue for the [c]ourt to adjudicate and dismissal is warranted.

(Footnote omitted.)

The Stasiewiczes argue that implied and prescriptive easement claims are not precluded by the existence of an express easement because those "easements can co-exist with express easements and . . . can grant Stasiewiczs [sic] greater rights than those [HLV] granted in their highly restrictive express easements." They further argue that the district court improperly relied on the "historical use of the land" because the issue is irrelevant to whether the Stasiewiczes have an implied easement or prescriptive easements. In response, HLV argues that the district court properly dismissed the implied easement claim because "the easement granted by [HLV] provides what is reasonably necessary for proper enjoyment of the Stasiewicz property, allowing use of the road for both residential and agricultural purposes." HLV also argues that the district court properly dismissed the prescriptive easement claim because the scope of any prescriptive easement was limited to agricultural use, while the easement granted by HLV provided greater rights by allowing single-family residential use in addition to agricultural use.

As set forth above, the issue of whether the Stasiewiczes are entitled to an easement over Whitetail Lane is moot because HLV granted the Stasiewiczes an unrestricted access easement over Whitetail Lane. Therefore, our review is limited to the district court's mootness analysis as it relates to the Stasiewiczes' implied and prescriptive easement claims over Bootjack Drive.

As an initial matter, the district court did not cite, nor can we find, any authority that supports the court's conclusion that the restrictive access easement HLV granted over Bootjack Drive rendered the Stasiewiczes' implied and prescriptive easements claims moot. This is not surprising. If an express easement rendered alternative easement claims moot as a matter of course, a property owner defending against a meritorious easement claim could effectively avoid burdening his land by granting the plaintiff an express easement festooned with qualifications,

20

conditions, and restrictions on the scope of the easement. This undermines a landowner's ability to obtain effective relief from a court under alternative easement theories.

As set forth above, "[a] case becomes moot . . . 'only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.' " *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160–61 (2016) (quoting *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012)). Thus, the question is whether the Stasiewiczes would be entitled to an access easement over Bootjack Drive that is broader in scope than the easement granted by HLV if they prevailed on their implied easement or prescriptive easement claims.

The Stasiewiczes would clearly be entitled to an easement that is broader in scope if they prevail on their implied easement by prior use claim. "[T]he scope of the implied easement by prior use is for *unlimited reasonable use*." *Aizpitarte v. Minear*, 170 Idaho 186, 200, 508 P.3d 1260, 1274 (2022) (alteration in original) (emphasis added) (quoting *Spectra Site Commc'ns, Inc. v. Lawrence*, 160 Idaho 570, 575, 377 P.3d 75, 80 (2016)). "[T]here is no authority for limiting an implied easement." *Id.* (citation modified). Accordingly, HLV's decision to grant the Stasiewiczes a restrictive access easement did not render their implied easement claim moot because the scope of an implied easement by prior use is for unlimited reasonable use as a matter of law.

We cannot, however, determine the scope of a prescriptive easement at this juncture because this determination would require a ruling on the substantive merits of the Stasiewiczes' claim. When a prescriptive easement is established, the "scope of a prescriptive easement is determined by the use through which it is acquired." *Id.* (quoting *Latvala v. Green Enters., Inc.*, 168 Idaho 686, 702, 485 P.3d 1129, 1145 (2021)). Thus, "the scope of a prescriptive easement is fixed by the use made during the prescriptive period." *Id.* (citation modified) (quoting *Beckstead v. Price*, 146 Idaho 57, 64–65, 190 P.3d 876, 883–84 (2008)). Even so, if the Stasiewiczes prevailed on a prescriptive easement claim, the easement would not "automatically terminate[]" if the Stasiewiczes subdivide their 80 acres or use their property for anything other than agricultural and/or single-family residential purposes, unlike the 2021 Bootjack Drive Easement. "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin*, 568 U.S. at 172 (quoting *Knox*, 567 U.S. at 307–08). Accordingly, the Stasiewiczes' prescriptive easement claim is not moot because the easement would not contain the limitations set forth in the 2021 Bootjack Drive Easement, even if the scope of any prescriptive easement was limited to agricultural use.

21

For these reasons, we conclude that the district court erred when it dismissed the Stasiewiczes' implied and prescriptive claims as moot under Rule 12(b)(1).

## III.   CONCLUSION

For the reasons set forth above, we conclude that the district court erred by raising the res judicata defense sua sponte and, therefore, we reverse the district court's decision to dismiss the Stasiewiczes' easement claims on that basis. Next, we conclude that, although the issue of whether the Stasiewiczes are entitled to an easement over Whitetail Lane is moot, the district court erred when it dismissed as moot the Stasiewiczes' claims for an easement over Bootjack Drive. Accordingly, the judgment of the district court is vacated, its decision dismissing the Stasiewiczes' claims is reversed, and this case is remanded for further proceedings. Costs are awarded to the Stasiewiczes as the prevailing party. I.A.R. 40(a).

Chief Justice BEVAN and Justices BRODY, MOELLER, and ZAHN CONCUR.